1
2
3
4
5
6
7

8               UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TIMOTHY TODD WOOLCOTT,                No.  2:14-cv-2837-CKD

12              Plaintiff,

13        v.                               ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

21   ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

22   summary judgment and grant the Commissioner's cross-motion for summary judgment.

23   I.    BACKGROUND

24        Plaintiff, born November 5, 1959, applied on March 29, 2012 for DIB and SSI, alleging

25   disability beginning March 15, 2009.[1]  Administrative Transcript ("AT") 13, 186-202.  Plaintiff

26   alleged he was unable to work primarily due to lower back pain, cirrhosis of the liver and other

27

28   _____
     [1] Plaintiff later amended his alleged onset date to November 5, 2009.  AT 276, 282.

                                    1

liver problems, insomnia, and depression.  AT 249.  In a decision dated April 25, 2013, the ALJ

determined that plaintiff was not disabled.[2]  AT 13-21**.**  The ALJ made the following findings

(citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

> 2.  The claimant has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date.

> 3.  The claimant has the following severe impairments: obesity (260 pounds and 5' 10" per claimant testimony), stable liver disease, and lumbar degenerative disc disease with radiculopathy.

////

---

[2]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on November 5, 1959 and was 49 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant subsequently changed category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. The claimant has acquired work skills from past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2009, through the date of this decision.

AT 15-21.

II.      ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly assessed the medical evidence regarding the severity of plaintiff's mental impairments at step two and when determining plaintiff's residual functional capacity ("RFC"); and (2) improperly determined that plaintiff was not disabled under the Medical-Vocational Guidelines (the "Grids") by not finding that plaintiff was limited to non-skilled work.

III.     LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

1  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

2  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

3  Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

4  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

5  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

6  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

7  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

8       The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

9  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

10  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

11  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

12  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

13  administrative findings, or if there is conflicting evidence supporting a finding of either disability

14  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

15  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

16  weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

17  IV.   ANALYSIS

18       A.   The ALJ did not Err in Addressing the Medical Evidence at Step Two and When

19            Determining Plaintiff's RFC

20       First, plaintiff asserts that the ALJ erred at step two of the analysis by finding that plaintiff

21  did not have any "severe" mental impairments despite the existence of evidence in the record

22  demonstrating that plaintiff suffered from depression, and that that impairment had more than a

23  minimal impact on plaintiff's ability to perform work-related functions.  Specifically, plaintiff

24  argues that the ALJ improperly considered the opinion of Dr. Sanchez-Barker, an examining

25  psychiatrist, at step two by ignoring the limitations Dr. Sanchez-Barker opined.  Plaintiff also

26  contends that the ALJ failed to consider the opinions of Dr. Meenakshi and Dr. Arnado, two non-

27  examining State agency physicians who reviewed plaintiff's medical records and opined that

28  plaintiff had "moderate" mental limitations, when determining whether plaintiff had severe

4

1   impairments at step two.  Finally, plaintiff contends that the ALJ committed further error by not

2   including any mental limitations in her RFC determination that reflected the opinions of these

3   physicians.

4        An impairment is "not severe" only if it "would have no more than a minimal effect on an

5   individual's ability to work, even if the individual's age, education, or work experience were

6   specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants whose

7   medical impairment is so slight that it is unlikely they would be disabled even if age, education,

8   and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137 (1987).  "The step-two

9   inquiry is a *de minimis* screening device to dispose of groundless claims."  Smolen v. Chater, 80

10  F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir.

11  2001).  Impairments must be considered in combination in assessing severity.  20 C.F.R. §

12  404.1523.

13       Here, the ALJ considered whether plaintiff's diagnosed depression caused more than a

14  minimal impairment on plaintiff's ability to perform work-related activities and determined that it

15  caused no more than mild limitations, therefore warranting its non-inclusion on the list of

16  plaintiff's severe impairments.  AT 15-16.  Plaintiff argues that this determination was flawed

17  because Dr. Sanchez-Barker gave plaintiff a Global Assessment of Functioning ("GAF") score of

18  51[3] and opined that plaintiff's mental impairments caused mild-to-moderate limitations regarding

19  his ability to interact with coworkers and the public, and maintain adequate concentration,

20  persistence, pace, and emotional stability in the workplace, therefore indicating that plaintiff's

21  depression was severe for purposes of step two.  AT 42-21.  Plaintiff contends that the ALJ failed

22  to properly evaluate Dr. Sanchez-Barker's opinion when considering plaintiff's impairments at

23  step two because she determined that plaintiff's depression caused no more than mild mental

24  limitations.  This contention is unfounded.

25  _____

26  [3] GAF is a scale reflecting the "psychological, social, and occupational functioning on a
    hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental

27  Disorders at 34 (4th ed. 2000).  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect
    and circumstantial speech, occasional panic attacks) or moderate difficulty in social,

28  occupational, or school function (e.g., few friends, conflicts with peers or co-workers).  Id.

When discussing plaintiff's impairments at step two, the ALJ directly discussed Dr. Sanchez-Barker's examination findings and opinion of plaintiff's psychological functioning in the context of the entire medical record concerning plaintiff's depression and came to the conclusion that this evidence, as a whole, supported a finding that plaintiff's depression caused no more than mild limitations on his ability to perform work-related mental activities.  AT 16.  In support of her conclusion, the ALJ noted that plaintiff told Dr. Sanchez-Barker during the examination that he had never received any type of psychological services prior to the examination and that he had not used any anti-depression medication within the prior 10 years.  AT 16, 419.  The ALJ also noted that plaintiff's mental treatment records dated after Dr. Sanchez-Barker's examination document that the only treatment plaintiff received for his depression during the relevant time was mental health counseling that occurred over the course of a roughly five-month period, and which resulted in the treating therapist determining on September 27, 2012 that plaintiff "has the necessary tools to enhance his life management skills independent of therapeutic services" and discharging plaintiff from further counseling.  AT 16 (citing AT 497-98, 502-505, 516-17). Finally, the ALJ further noted that plaintiff had not been prescribed psychotropic medication at any time during the relevant period, the treatment records subsequent to the conclusion of plaintiff's counseling treatment provided no indication that plaintiff was suffering from persistent psychological symptoms, and that the daily activities described in plaintiff's own functional self-assessment indicated no more than mild mental limitations.  Id.  This evidence substantially supports the ALJ's step two determination, even in light of Dr. Sanchez-Barker's examining opinion that plaintiff had moderate mental impairments, because it reasonably indicates that plaintiff's depression had no more than a minimal impact on his functional capacity over the course of the relevant period.

With regard to the ALJ's consideration of Dr. Sanchez-Barker's opinion when determining plaintiff's RFC, the ALJ expressly discounted Dr. Sanchez-Barker's opinion on the basis that it was founded on a single examination and did not reflect the other evidence in the record regarding the impact of plaintiff's mental impairments.  AT 19.  As the ALJ highlighted at step two, the medical evidence in the record demonstrates that plaintiff did not receive any

1   treatment for depression during the relevant period prior to his examination by Dr. Sanchez-

2   Barker in April of 2012, and that the counseling he received after that examination was limited in

3   duration and resulted in an improvement of his depression to the point where the treating therapist

4   determined that he no longer needed further counseling.  AT 497.  Furthermore, the evidence

5   from after the brief counseling period provides no indication that plaintiff suffered from

6   continuing symptoms of depression or received any further care for that condition during the

7   remainder of the relevant period.  See AT 280, 493, 530.  In short, the treating records regarding

8   plaintiff's mental status demonstrate that plaintiff's depression did not have more than a minimal

9   impact on plaintiff's functioning for the duration of the relevant period.  The ALJ's use of this

10  evidence to find that Dr. Sanchez-Barker's opinion was not entitled to deference to the extent that

11  it opined that plaintiff's depression caused more minimal limitations was legally sufficient.  See

12  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.1999) (physician's conclusory, minimally

13  supported opinion rejected); Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) (holding that

14  the ALJ properly discounted a physician's opinion when it "was not substantiated by medical

15  evidence relevant to the period in question").

16         Plaintiff also argues that the ALJ erred by not considering the opinions of State agency

17  non-examining physicians of Dr. Meenakshi and Dr. Arnado at step two, and by not adopting

18  their opinions that plaintiff had moderate mental limitations into her RFC determination.  While

19  the ALJ did not directly address these opinions when discussing plaintiff's mental impairments at

20  step two, she did discuss and reject these opinions for the same reasons she discounted Dr.

21  Sanchez-Barker's opinion when addressing plaintiff's RFC.  AT 19.  These two opinions' mental

22  assessments were based entirely on Dr. Sanchez-Barker's examination and opinion, and neither

23  State agency physician reviewed any of the other medical evidence in the record relating to the

24  treatment of plaintiff's depression, such as the records from his mental health counseling sessions

25  from April to September of 2012.  See AT 81-110, 113-140.  Accordingly, the ALJ's reasons for

26  discounting Dr. Sanchez-Barker's opinion were equally applicable to the State agency physicians'

27  opinions.  The ALJ was not required to adopt the mental limitations opined by these physicians

28  when considering plaintiff's impairments at step two and for purposes of determining plaintiff's

1  RFC.  See 20 C.F.R. § 404.1527(e)(2) ("Administrative law judges are responsible for reviewing

2  the evidence and making findings of fact and conclusions of law . . . [and] are not bound by any

3  findings made by State agency medical or psychological consultants.").

4          Moreover, even if the ALJ technically erred by not finding plaintiff's depression severe

5  for purposes of step two, such error was harmless if the ALJ proceeded to consider the effects of

6  that impairment at subsequent steps.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

7  Because the ALJ found other impairments to be severe at step two, she proceeded to subsequent

8  steps of the sequential disability evaluation process.  Furthermore, the ALJ considered the impact

9  of all of plaintiff's medically-determinable impairments, regardless of their severity, when

10  determining plaintiff's RFC.  See AT 17 ("In making this finding, the undersigned has considered

11  all symptoms and the extent to which these symptoms can reasonably be accepted as consistent

12  with the objective medical evidence and other evidence . . .").  While the ALJ did not specifically

13  discuss plaintiff's depression when determining his RFC, her discussion of the opinion evidence

14  addressing the impact of plaintiff's mental impairments and the fact that the ALJ considered all of

15  plaintiff's medically determinable symptoms demonstrates that the ALJ took plaintiff's

16  depression into account in arriving at her RFC conclusion.  See AT 19; Magallanes v. Bowen,

17  881 F.2d 747, 755 (9th Cir. 1989) (the court may "draw[ ] specific and legitimate inferences from

18  the ALJ's opinion").  Therefore, any error the ALJ could have committed at step two by not

19  finding plaintiff's alleged depression severe would have been, at most, harmless.

20          In addition, even had the ALJ erred in not giving greater weight to the opinions of Dr.

21  Sanchez-Barker and the State agency physicians when determining plaintiff's RFC, any such

22  error would have been harmless.  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we

23  may not reverse an ALJ's decision on account of an error that is harmless").  Dr. Sanchez-Barker

24  opined that plaintiff's depression caused only mild-to-moderate limitations in his ability to

25  perform mental workplace activities and determined that plaintiff had a GAF score of 51,

26  indicating that plaintiff's mental impairments caused only moderate functional limitations.  AT

27  420-21.  The non-examining State agency physicians opined similar "moderate" limitations.  See

28  AT 91-92, 106-107, 123-24, 137-38.  The Ninth Circuit Court of Appeals has held that moderate

1    mental limitations are not sufficiently severe so as to require vocational expert testimony.  Hoopai

2    v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (involving an assessment that the claimant was

3    moderately limited in "his ability to maintain attention and concentration for extended periods;

4    his ability to perform activities within a schedule, maintain regular attendance, and be punctual

5    with customary tolerance; and his ability to complete a normal workday and workweek without

6    interruption from psychologically-based symptoms and to perform at a consistent pace without an

7    unreasonable number and length of rest periods.").

8         B.    The ALJ did Not Err in Not Including a Limitation to Unskilled Work in Her RFC

9               Determination

10   Next, plaintiff argues that the ALJ should have determined that plaintiff was limited to

11   performing only unskilled work; therefore rendering the ALJ's determination that plaintiff could

12   perform the representative jobs of layout technician of optical goods, clock/watch inspector, and

13   inspector of optical goods erroneous as all of those jobs are considered "skilled" or "semi-skilled"

14   jobs under the Dictionary of Occupational Titles.  Plaintiff argues further that this error requires

15   the court to remand this case for an award of benefits because plaintiff was 50 years old on his

16   amended alleged onset date of November 5, 2009, which made him a person "closely

17   approaching advanced age" under the Grids, and the ALJ's RFC determination limited him to

18   only sedentary work, therefore requiring the ALJ to find him disabled under the framework set

19   forth in the Grids when an additional limitation permitting only unskilled work is taken into

20   account.  This argument is without merit.

21   Plaintiff asserts that the medical record demonstrates that he should be limited to non-

22   skilled work.  Specifically, he contends that the opinions of Dr. Sanchez-Barker and the State

23   agency non-examining physicians demonstrate that plaintiff was so limited.  However, as

24   discussed above, the ALJ properly rejected the opinions of the State agency non-examining

25   physicians who opined that plaintiff was limited to non-skilled work.  AT 19.  Dr. Sanchez-

26   Barker opined no such limitation and her findings and opinions concerning plaintiff's mental

27   impairments and limitations do not suggest that plaintiff was unable to perform skilled or semi-

28   skilled work similar to the semi-skilled-to-skilled jobs he previously held.  AT 420-21.

9

1  Furthermore, in any event, the ALJ properly discounted Dr. Sanchez-Barker's opinion for the

2  reasons discussed above.  Accordingly, plaintiff fails to satisfy his burden in proving that he was

3  limited to only non-skilled work.  Because the ALJ properly determined that plaintiff was capable

4  of performing skilled or semi-skilled work, she did not err in finding that plaintiff could perform

5  the representative skilled and semi-skilled jobs she discussed in her decision.  As a result, the

6  Grids did not require the ALJ to find plaintiff disabled at step five.

7  V.    CONCLUSION

8         For the reasons stated herein, IT IS HEREBY ORDERED that:

9         1.  Plaintiff's motion for summary judgment (ECF No. 14) is denied;

10        2.  The Commissioner's cross-motion for summary judgment (ECF No. 22) is granted;

11  and

12        3.  Judgment is entered for the Commissioner.

13  Dated:  October 15, 2015

14  _____
    CAROLYN K. DELANEY
15  UNITED STATES MAGISTRATE JUDGE

16

17

18  11 woolcott2837.ss

19

20

21

22

23

24

25

26

27

28